ESTATE OF Cecil Anthony DEMUTIS, Deceased, Appellant,

v.

ERIE INSURANCE EXCHANGE, Appellant.

Superior Court of Pennsylvania.

Argued March 18, 2004.
Filed May 18, 2004.

Michael E. Fiffik, Pittsburgh, for appellant.

Phillip Earnest, Pittsburgh, for appellee.

BEFORE: KLEIN, BENDER and JOHNSON, JJ.

OPINION BY KLEIN, J.:

¶ 1 Cecil Anthony Demutis was killed when the car in which he was a passenger, driven by his father, was hit head-on by another driver. His estate recovered full policy limits both from the striking driver's policy and from his father's UIM policy. The estate now makes a claim under the policy that Demutis held with Erie Insurance Exchange on his own car. Demutis, about 50 years of age at the time of his death, lived with his parents.

¶ 2 Erie denied coverage on the basis of the household exclusion in Demutis' policy, which excluded UIM coverage when the insured was occupying a car owned by a resident relative but not insured by Erie. The plain language of the policy clearly excluded this claim. The estate claims this clause violates public policy. Under case law, it is clear the household exclusion does not violate public policy. Therefore, we affirm.

¶ 3 The estate argues the analysis should be different in this case, when the insured is in his father's car and claiming under his own policy rather than when the insured is in his own car and claiming under his father's policy. The estate also claims that it should be allowed to put on evidence to show there would be little difference in exposure to Erie.

¶ 4 This is a distinction without a difference. We believe the analysis of risk assessment provided by our *en banc* decision in *Rudloff v. Nationwide Mut. Ins. Co.*, 806 A.2d 1270 (Pa.Super.2002), is equally applicable here. The idea behind upholding the household exclusion is the stated public policy to reduce premiums. In allowing the household exclusion, our courts and the General Assembly have implicitly agreed that multiple vehicles in a single household represents a statistically higher risk than is represented by an insured riding in a friend's car. As such, an insurer is not obligated to provide coverage for that higher risk of which it was unaware and uncompensated. It is obvious that had Demutis insured his vehicle

under his father's policy, that premium would have increased by some amount for the additional UM/UIM coverage.[1] That higher premium represents the risk for which the insurer was not compensated but is now being asked to assume.

■ ¶ 5 Realizing the above, the estate's claim that public policy is being defeated in that he is being denied coverage for which he paid is shown to be incorrect. We note that:

> [A] clear and unambiguous contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy [and] the Court is mindful that public policy is more that a vague goal which may be used to circumvent the plain meaning of the contract.

*Rudloff*, 806 A.2d at 1273. Demutis paid for UIM coverage that would apply to virtually every vehicle in the United States [2] **except** for any vehicle not insured on his policy **and** which belongs to a resident relative. The exception of one or two vehicles from UIM coverage from an untold pool of possibly covered vehicles does not strike us as violative of public policy. Therefore, whether or not Erie would have to pay if Demutis had been a passenger in a friend's car rather than his father's car is immaterial.

¶ 6 The well-respected trial judge, Cynthia A. Baldwin, discussed the pertinent facts and law in her well-reasoned opinion. We rely in great measure on her analysis of the law for our opinion.

¶ 7 Judge Baldwin aptly reviewed the key case law as follows:

> In *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 640 A.2d 1234 (1994), the Su-

preme Court of Pennsylvania first addressed the enforceability of a "family car exclusion" which was challenged on the ground of public policy under the Motor Vehicle Financial Responsibility Law, *75 Pa.C.S.A.* §§ 1701 *et seq.* ("MVFRL"). The exclusion in the *Paylor* case was defined in the policy at issue as excluding "a vehicle owned by or furnished or available for the regular use of the named insured or any family member from the definition of an underinsured motor vehicle." *Id.* at 1234. In *Paylor*, Betty and Fred Dymond were killed in a single-vehicle accident while operating their motor home. The Dymonds had an automobile insurance policy for their motor home issued by Foremost Insurance Company. The Dymonds insured three other family vehicles under a Hartford Insurance policy. After recovering the policy limits under the Foremost policy, the Estate of the Dymonds sought to recover UIM benefits under the Hartford policy. The Hartford Insurance Company declined coverage under the family car exclusion.

> The Supreme Court upheld the Hartford Insurance Company's declination of coverage under the family car exclusion, reasoning that the Estate of the Dymonds was not entitled to convert the relatively inexpensive underinsured motorist coverage of their other vehicles into more expensive liability coverage for their motor home. *Id.* at 1241. The *Paylor* Court explained that although the exclusion was generally not valid, the exclusion was not void as against public policy in that case because the Dymonds freely chose to carry less insurance on their motor home than on

---

**1.** The premium would have risen for other coverages provided as well, but we are only interested in UM/UIM coverage in this matter.

**2.** Typically, automobile insurance policies will also cover the insured in both Canada and Mexico, but not in any other foreign country.

their other vehicles. *Id.* at 1240–41. In *Paylor,* the Court contrasted the facts of that case with the facts of a case decided by the Superior Court in *Marroquin v. Mutual Benefit Ins. Co.,* 404 Pa.Super. 444, 591 A.2d 290 (1991).

In *Marroquin,* the Superior Court addressed the situation where one brother as a pedestrian was struck by the car operated by another brother. Both brothers lived with their parents. The vehicle involved in the accident was covered by its own policy issued by Mutual Benefit Insurance Company ("Mutual"). Mutual paid liability benefits to the injured brother. The injured brother then sought UIM coverage from his parents' automobile insurance policy, also issued by Mutual, which covered their personal vehicles. Mutual denied the UIM claim under the family car exclusion, which provided that an underinsured motor vehicle did not include any vehicle "[o]wned by or furnished or available for the regular use of you or any 'family member' ". *Id.* at 292. The Superior Court held that the household exclusion was void as against public policy. *Id.* at 296. The Court reasoned that UIM coverage should follow the injured brother and that the only bar to coverage was that his brother owned the vehicle that struck him. *Id.* at 297. Under these facts, the Court reasoned, the exclusion was not justified because the injured brother was not trying to convert UIM coverage into liability coverage. *Id.*

Approximately one month after the *Paylor* decision but without citing to the *Paylor* Opinion, the Supreme Court of Pennsylvania decided *Windrim v. Nationwide Ins. Co.,* 537 Pa. 129, 641 A.2d 1154 (1994). In *Windrim,* the Court addressed the situation where an individual who lived with his mother was driving his own uninsured vehicle and was injured by an unidentified hit-and-run driver. The injured person attempted to recover benefits under his mother's policy but was denied under that policy's household exclusion. The household exclusion provided in pertinent part that coverage "does not apply to bodily injury suffered while occupying or from being hit by a motor vehicle owned by you or a relative living in your household, but not insured for . . . Underinsured Motorists coverage under this policy." *Id.* at 1155. Without mentioning any presumption against the enforceability of the exclusion, the Court applied the plain meaning of the exclusion language, and stated that the exclusion was consistent with public policy because the injured individual had decided not to purchase insurance on his own vehicle and that voiding the exclusion would serve to discourage citizens from insuring their vehicles. *Id.* at 1158.

In *Eichelman v. Nationwide Ins. Co.,* 551 Pa. 558, 711 A.2d 1006 (1998), the Supreme Court addressed the situation where an individual was injured while occupying his own vehicle and was denied UIM benefits by the insurer of his parents' vehicles. The injured person did carry liability insurance but not UIM benefits on his vehicle. The exclusion language on his parents' policy provided that underinsured coverage did not apply to "[b]odily injury suffered while occupying a motor vehicle owned by you or a relative not insured for Underinsured Motorists coverage under this policy; nor to bodily injury from being hit by any such motor vehicle." *Id.* at 1007. As in *Windrim, supra,* the Court in *Eichelman* applied the plain meaning of the exclusion language, held that there was a lack of unanimity of opinion that the exclusion language violated public policy and after determining

that the exclusion did not go against the purposes of the MVFRL, held that the exclusion was valid because their was no "overriding public policy that forbids" an exclusion like the one at issue. *Id.* at 1009. The Court also pointed out that the injured person voluntarily chose not to pay for UIM coverage on his vehicle. *Id.* at 1010. The Court reasoned that "it is only in the clearest of cases that a court may make an alleged public policy the basis of judicial decision." *Id.*

The Supreme Court next addressed a public policy challenge to the "regularly used, non-owned car" exclusion in an automobile policy in the case of *Burstein v. Prudential Property and Casualty Ins. Co.*, 570 Pa. 177, 809 A.2d 204 (2002). In *Burstein*, Mr. and Mrs. Burstein were injured in a car accident while driving Mrs. Burstein's company car. Unbeknownst to the Bursteins, Mrs. Burstein's employer only carried liability and not UIM insurance on the vehicle. When the liability coverage of the other driver in the accident did not cover their losses, the Bursteins attempted to utilize the UIM coverage on their personal automobile insurance policies through Prudential Property and Casualty Insurance Company. Prudential declined to pay UIM benefits due to the following language in the Prudential policy: "We will not pay for bodily injury to you or a household resident using a non-owned car not insured under this part, regularly used by you or a household resident." *Id.* at 207.

The Trial Court and the Superior Court held that this exclusion violated public policy but the Supreme Court reversed. The Superior Court held the exclusion void on the theory that the MVFRL should be construed broadly to afford the greatest possible coverage and that UIM coverage should follow the person and not the vehicle. *Id.* at

206. The Supreme Court disagreed and emphasized the clear and unambiguous language of the exclusion. In its Opinion, the Supreme Court quoted the following language from its Opinion in *Eichelman, supra:*

> Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term 'public policy' is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy ... Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts... contrary to public policy. The courts must be content to await legislative action.

*Id.* at 207. The Supreme Court recognized that the Bursteins paid for UIM coverage on all of their personal vehicles but held, in light of the public policy concern for the increasing costs of automobile insurance, that insurers should not be forced to underwrite risks that are not known or for which they have not been compensated. *Id.* at 208.

In 2002, the Pennsylvania Supreme Court rendered the Opinion of *Prudential Property and Cas. Ins. Co. v. Colbert*, 572 Pa. 82, 813 A.2d 747 (2002) in response to the certified question of law from the United States Court of Appeals for the Third Circuit on the issue of the household vehicle exclusion. In *Colbert*, the question was whether an insurance company was liable for UIM benefits to an injured person under the policy of his parents when the injured person lived with his parents but was driving his own

car which was not covered by his parents' policy. The injured person had paid for liability and UIM coverage on his own policy and had received those benefits but he was seeking additional UIM under his parents' policy. The household exclusion at issue provided that the insurer "will not pay for bodily injury to anyone occupying or struck by a motor vehicle owned or leased by you or a household resident which is not covered under this policy, or if the liability coverage of that vehicle is used to pay any portion of an insured's bodily injury liability claim." *Id.* at 751.

The Court began its analysis by stating that it would apply the plain meaning of the contract unless the application would be contrary to a clearly expressed public policy. *Id.* at 752. The Court held that the injured person was not entitled to UIM under his parents' policy because his vehicle was not disclosed to his parents' insurer and voiding the other household car exclusion would allow the insured to receive coverage for which he has not paid. *Id.* at 753–54. The Court further held that voiding the household vehicle exclusion would allow insureds to collect UIM coverage *"multiplied by the number of insurance policies on which they could qualify as an insured,* even though they only paid for UIM coverage on one policy." *Id.* at 754 (emphasis in original). Thus, the Court upheld the exclusion.

¶ 8 Referring to the instant case, Judge Baldwin addressed the claim that the Erie policy household exclusion should be void because Anthony paid for UIM benefits under the Erie policy but had not received benefits from this policy. As Judge Baldwin aptly phrased it, "It is true that Anthony paid the premiums for UIM coverage under the policy at issue. However, the Estate is not seeking benefits for which it paid, it is seeking benefits that

were specifically excluded from the coverage of the Erie policy. Thus, the question before this Court is whether the Estate should be entitled under the circumstances to receive more benefits than that for which it paid on the ground of public policy?"

¶ 9 We agree with Judge Baldwin that "[T]he purpose of the household vehicle exclusion is to limit an insurer's liability for accidents which involve vehicles that are not insured under its policy but are more likely to be driven or occupied by an insured than third-party vehicles because they are owned by a household member." See *Nationwide Mut. Ins. Co. v. Harris,* 826 A.2d 880, 882–83 (Pa.Super.2003).

¶ 10 Again as Judge Baldwin noted, although some of the earlier cases applied a presumption against enforcing the household exclusion, in the cases decided after *Paylor* the Pennsylvania Supreme Court has not referred to any such presumption and has in fact expanded the applicability of the household exclusion. *See Old Guard Ins. Co. v. Houck,* 801 A.2d 559, 563 (Pa.Super.2002) (quoting *Eichelman v. Nationwide Ins. Co.,* 551 Pa. 558, 711 A.2d 1006 (1998) and citing *Hart v. Nationwide Ins. Co.,* 541 Pa. 419, 663 A.2d 682 (1995) and *Windrim v. Nationwide Ins. Co.,* 537 Pa. 129, 641 A.2d 1154 (1994)); *see also Rudloff v. Nationwide Mutual Ins. Co.,* 806 A.2d 1270, 1272–73 (Pa.Super.2002) (also recognizing the Supreme Court's shift in "its analysis of the validity of a household exclusion to focus on contract law and public policy"). As noted, *Burstein, supra,* also limits the effect of the public policy argument to void exclusionary language in automobile policies.

¶ 11 Judge Baldwin notes that in this case the insured was a passenger in his parents' car. Since it is more likely that a person would ride as a passenger in the

car of someone with whom he or she lives, it is an expanded risk to cover that person. Therefore, there is a logical reason to exclude such a person from coverage, which would reduce the cost of the insured's premium.

¶ 12 Judge Baldwin accurately stated the concern of the legislature to keep down the costs of automobile insurances as follows:

The MVFRL has been described as reflecting a "legislative concern for the spiraling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways." *Paylor,* 640 A.2d at 1235; *see also Colbert,* 813 A.2d at 753; *Burstein* 809 A.2d at 208, n. 3; *Eichelman,* 711 A.2d at 1008; *Windrim,* 641 A.2d at 1157–58. In *Rudloff v. Nationwide,* the Superior Court reiterated the standard that appeared in *Eichelman, supra,* and *Old Guard, supra,* to be applied as follows: "that a clear and unambiguous contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy [and] this Court is mindful that public policy is more than a vague goal which may be used to circumvent the plain meaning of the contract~" *Rudloff,* 806 A.2d at 1273 (quoting *Old Guard,* 801 A.2d at 566 (quoting *Eichelman,* 711 A.2d at 1008)).

■ ¶ 13 For the reasons clearly stated by Judge Baldwin, we hold that an automobile insurance policy exclusion barring an insured who was a passenger in a household vehicle from receiving UIM benefits under his own policy due to the household exclusion is not void as against public policy when the insured received UIM benefits from the policy covering the household vehicle.

¶ 14 Order affirmed. Jurisdiction relinquished.